UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ENGLE, an Individual,<br>Plaintiff,<br>v.<br>ZURICH AMERICAN INSURANCE COMPANY, an Illinois business entity,<br>Defendant. | Case No.: 26cv2356-W-GC<br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DOC. 7]** |

## I. INTRODUCTION

Pending before the Court is a motion to dismiss by Defendant Zurich American Insurance Company ("Defendant") to dismiss the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith denial of insurance, and to strike the claim for punitive damages on the same basis. (*Mtn.* [Doc. 7].) Plaintiff William Engle ("Plaintiff") opposes the motion. (*Opp'n* [Doc. 8].) Defendant filed a reply in support of its motion. (*Reply* [Doc. 9].) In the event the Court grants the motion to dismiss, Plaintiff requests leave to amend.

The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, the Court **GRANTS** the motion to dismiss the breach of contract, breach of the implied covenant of

good faith and fair dealing, and the bad faith denial of insurance claims asserted against Defendant **WITH LEAVE TO AMEND**.

## II. BACKGROUND

The following facts are taken from Plaintiff's complaint. Plaintiff is an individual residing in San Diego County. (*Compl.* [Doc. 1] at ¶ 5.) On July 8, 2025, Plaintiff purchased the "Ultimate Travel protection plan" from Defendant to insure a trip for himself and his wife from San Diego to the Netherlands, then a cruise from the Netherlands to Switzerland, and then back to San Diego, for the dates of September 1, 2025, to September 13, 2025. (*Compl.* at ¶¶ 9, 11–14.) Plaintiff paid $4,400.00 for the travel insurance policy. (*Id*. at ¶ 15.)

On July 28, 2025, the travel agency informed Plaintiff that the cruise would disembark in Breisach, Germany rather than Basel, Switzerland. (*Id*. at ¶ 16.) Plaintiff alleges that Germany, unlike Switzerland, had been issued a serious travel advisory by the U.S. Department of State due to risks of terrorism. (*Id*. at ¶¶ 18–19.) Plaintiff further alleges that the itinerary change required him to travel into Germany and physically cross an international land border, which was a material departure from the original travel conditions Plaintiff agreed to when he purchased the trip and travel insurance. (*Id*. at ¶ 20.) Plaintiff intended to travel by airplane and cruise, such that the unexpected requirement to enter a different country by land, with a travel advisory, caused Plaintiff substantial concern and distress. (*Id*. at ¶ 21.)

On August 1, 2025, Plaintiff cancelled the trip. (*Id*. at ¶ 22.) Plaintiff notified defendant of the insurance claim and provided details of the itinerary change and its impact on his ability to safely complete the trip. (*Id*. at ¶ 23.) Plaintiff alleges he suffered "acute physical symptoms, including chest pain, shortness of breath, and severe anxiety," shortly after learning of the itinerary change. (*Id*. at ¶ 24.) Plaintiff sought medical attention for these symptoms, which were allegedly consistent with a sudden and severe

physiological stress response, accompanied by physical manifestations, that required evaluation to rule out serious medical conditions. (*Id*. at ¶¶ 25–26.)

After receiving notice of Plaintiff's medical condition and the itinerary change, Plaintiff alleges that Defendant failed to conduct a reasonable investigation and denied coverage based on "boilerplate" policy exclusions. (*Id*. at ¶ 27.) Particularly, Plaintiff alleges that Defendant improperly characterized the episode as a "mental, nervous, or psychological disorder" despite the temporary, situational, and physical nature of the conditions. (*Id*. at ¶ 28.) Finally, Defendant notified Plaintiff that the itinerary change was not a covered event under the insurance policy and denied Plaintiff's claim. (*Id*. at ¶ 29.) Plaintiff argues that Defendant breached the insurance policy by denying the claim without a valid or lawful basis and acted in bad faith by failing to give equal consideration to Plaintiff's interests and by misapplying policy provisions to deny coverage. (*Id*. at ¶¶ 31–32.) As a result, Plaintiff alleges he has suffered financial losses, including the unreimbursed travel expenses, as well as significant emotional distress. (*Id*. at ¶ 33.)

## III. <u>Legal Standard</u>

A pleading can be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is only appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pac. Police Depot*, 901 F.2d 696, 699 (9th Cir. 1988). At the motion to dismiss phase, the allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*,

550 U.S. 544, 555 (2007). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Courts have broad discretion to grant leave to amend a complaint. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). A court should grant leave to amend unless the plaintiff could not possibly cure defects in the pleading. *Knappenberger v. City of Phoenix*, 556 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## IV. DISCUSSION

### A. Request for Incorporation by Reference

In deciding the motion to dismiss, Defendant urges the Court to consider the insurance policy and supporting documentation that, while not attached to Plaintiff's complaint, were nonetheless referenced and relied on by Plaintiff. (*Mtn.* at 13–14.) Defendant argues the doctrine of incorporation by reference applies here because Plaintiff necessarily relies on these documents for his claims, and there is no challenge to the documents' authenticity or dispute over its relevancy. (*Id.*) Defendant's motion to dismiss incorporates the Warley Declaration[1] along with Exhibits A–F, which includes the insurance policy and materials that Plaintiff submitted to Defendant in support of his insurance claim. (*Decl.* [Doc. 7-1] at 1–99.) Plaintiff does not object to the Court considering the insurance policy but argues that using the Warley Declaration and claim materials to argue disputed factual issues is improper at the 12(b)(6) stage. (*Opp'n* at 3–

[1] Janet Warley is a Claims Manager for Defendant, Zurich American Insurance Company. (*Decl.* at ¶ 2.) Warley is familiar with the claim tendered by Plaintiff, as well as the materials submitted by Plaintiff in support of his claim. (*Id.*) Warley asserts that the attached exhibits are true and correct copies of the insurance policy and claim materials. (*Id.* at ¶¶ 3–8.)

4.) The Court incorporates by reference the insurance policy and corresponding confirmation of coverage (Exhibits A and B), while next considering whether it is proper to incorporate the claim materials.

The Ninth Circuit has held that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). The incorporation by reference doctrine has been extended to situations in which the plaintiff's "complaint necessarily relies upon a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). When a document "forms the basis of the plaintiff's claim," the Court may treat the document "as part of the complaint" and "assume that its contents are true for purposes of a motion to dismiss." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The application of the doctrine may be improper when "defendants possess materials to which the plaintiffs do not yet have access" and the defendants are "permitted to present their own version of the facts at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 998, 999 (9th Cir. 2018).

Here, Plaintiff's complaint "necessarily relies upon" the trip claim form (Exhibit C), which contains the physician's diagnosis underlying the disputed coverage determination. *See Eisenberg*, 593 F.3d at 1038. Plaintiff alleges that "Defendant improperly characterized Plaintiff's acute medical episode as a 'mental, nervous, or psychological disorder,' even though no such diagnosis was made and the symptoms were temporary, situational, and physically manifested." (*Compl.* at ¶ 28.) Plaintiff further alleges that Defendant received notice of his medical condition but failed to reasonably investigate his claim before denying coverage. (*Id.* at ¶ 27.) Because Plaintiff specifically challenges Defendant's characterization of his medical condition and its resulting denial of coverage, the trip claim form documenting the physician's diagnosis is

central to Plaintiff's breach of contract claim. (*Decl.* at 88–89.) The Court therefore incorporates Exhibit C by reference.

Plaintiff's complaint further alleges that Defendant's determination that the itinerary change was not a covered event and its subsequent denial of coverage was "without a valid or lawful basis . . . was not the result of a fair, thorough or reasonable investigation" and was done "in bad faith by failing to give equal consideration to Plaintiff's interests, misapplying and mischaracterizing policy provisions, and relying on unfounded and pretextual grounds to deny coverage." (*Compl.* at ¶ 29–32.) These allegations necessarily depend on the relevant policy provisions regarding an "Other Covered Event" and their application to the disputed event, the itinerary change.

However, the remaining exhibits, the flight information for the original itinerary (Exhibit D), the cruise invoice detailing its cost, dates, and original itinerary (Exhibit E), and the cruise operator's letter describing the itinerary change (Exhibit F), merely provide additional details concerning the itinerary change already alleged in the complaint. (*See Decl.* at 92–98.) Although these documents may provide additional information regarding the allegations, Plaintiff's complaint does not expressly reference or necessarily rely on the specific documents to establish his breach of contract claim. Moreover, Defendant relies on certain details contained in Exhibit F to challenge the significance of the itinerary change. *See Khoja*, 899 F.3d at 1002 ("[i]f the document merely creates a defense to the well-pled allegations in the complaint, then that document does not necessarily form the basis of the complaint.")

Accordingly, the Court declines to incorporate Exhibits D–F by reference and considers the Warley declaration only for the limited purpose of authenticating the exhibits incorporated by reference.

### B. First Claim: Breach of Contract

Defendant moves to dismiss Plaintiff's breach of contract claim, arguing that Plaintiff fails to allege facts to support his claim with any specificity. (*Mtn.* at 15.) Defendant further argues that the travel insurance policy excludes coverage for "mental,

nervous, or psychological disorders," that the itinerary change did not constitute an "Other Covered Event," and, in any event, was also excluded from coverage. (*Mtn*. at 15–17.) Plaintiff responds that his medical condition was covered by the policy and Defendant's conclusion that the itinerary change was not an "Other Covered Event" is an unreasonable interpretation of the policy. (*Opp'n* at 4–9.)

**a. Medical Condition**

Defendant argues that Plaintiff's medical condition was excluded from coverage under the following policy terms:

> We will not pay for any loss under this **Policy**, arising directly or indirectly out of, or as a result of, or from, or that occur to, or are as a result of the actions of, the **Insured** . . . for the following: . . . mental, nervous, or psychological disorders. This exclusion does not apply to the Emergency Medical and Dental Expense Benefit.

(*Decl.* at 36.) Plaintiff responds that his medical condition is covered because it falls within the requirements for cancellation due to Sickness. (*Opp'n* at 4.) Sickness is defined under the policy as "a sickness, illness or disease, that impairs the normal functions of the body and that requires examination and treatment by a Physician." (*Decl.* at 35.) The relevant policy terms state:

> We will reimburse the **Insured** a Pre-Departure Trip Cancellation Benefit, if the **Insured** is prevented from taking his/her **Covered Trip** due to the **Insured's** . . . **Sickness** . . . We will reimburse the **Insured** this Pre-Departure Trip Cancellation Benefit, only if the **Sickness** . . . occurs before departure of the **Insured's Covered Trip** and commences while the **Insured's** coverage is in effect under this **Policy**.
>
> Any **Sickness** . . . must: (i) require the examination or treatment by a **Physician;** and (ii) in the written opinion of the treating **Physician**, be so disabling as to prevent the **Insured** from taking his/her **Covered Trip**. . .

(*Id*. at 13.)

Under California law, a fundamental rule of contract interpretation is to give effect to the mutual intention of the parties, "to be inferred, if possible, solely from the written provisions of the contract." M*acKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 647

(2003) (citing Cal. Civ. Code § 1639). The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" controls judicial interpretation. *MacKinnon*, 31 Cal. 4th at 647-648. "Before 'even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within [the policy terms].'" *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 16 (1995) (quoting *Hallmark Ins. Co v. Superior Court*, 201 Cal.App.3d 1014, 1017 (1988)). "The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." *MacKinnon*, 31 Cal. 4th at 648. Exclusionary clauses "are interpreted narrowly against the insurer" and must be "conspicuous, plain and clear." *Id.* at 648. However, the Court "will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19.

Plaintiff's complaint sufficiently alleges a covered "Sickness" to bring his claim "within the basic scope of coverage." *MacKinnon*, 31 Cal. 4th at 648. Plaintiff alleges that he "experienced acute physical symptoms, including chest pain, shortness of breath, and severe anxiety, shortly after learning of the forced change in disembarkation." (*Compl.* at ¶ 24.) These symptoms could plausibly impair the normal functions of the body to fit within the insurance policy's definition of Sickness. Plaintiff also alleges that he sought medical attention, although the complaint does not specify whether a Physician provided a written opinion advising him to cancel his travel plans. (*Id.* at 25.)

However, Defendant has "establish[ed] that the claim is specifically excluded." *MacKinnon*, 31 Cal. 4th at 648. The insurance policy excludes losses "arising directly or indirectly" out of mental, nervous, or psychological disorders. (*Decl.* at 36.) Plaintiff's allegations suggest that his condition and subsequent decision to cancel his trip arose indirectly out of a mental, nervous, or psychological disorder. Plaintiff alleges that the unexpected requirement to enter a different country with a travel advisory caused "significant anxiety" and "substantial concern and distress." (*Compl.* at ¶¶ 20–21.) The trip claim form (Exhibit C) confirms this account, as Plaintiff states that he experienced a

panic attack and debilitating anxiety "triggered by" the itinerary change and describing his condition as consistent with a "panic attack and adjustment disorder and anxiety." (*Decl.* at 87–88.) Even interpreted "narrowly against the insurer," a mental, nervous, or psychological disorder would reasonably include a formal diagnosis of a DSM-5 recognized psychological disorder. *MacKinnon*, 31 Cal. 4th 635, 647-648; (*Mtn*. at 16.) To suggest otherwise would require the Court to "strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19. Accordingly, the complaint and the trip claim form show that Plaintiff's losses arose "directly or indirectly out of" a psychological disorder and are therefore excluded based on the plain language of the policy.

**b. Itinerary Change**

Defendant next argues that the itinerary change in disembarkation does not qualify as an "Other Covered Event" and, in any event, falls under the following policy exclusion: "failure of any tour operator, **Common Carrier**, other travel supplier, person or agency to provide the bargained-for travel arrangements/services." (*Mtn*. at 16–17.) Plaintiff counters that Defendant unreasonably interpreted the policy in determining that the change in disembarkation location was not an "Other Covered Event." (*Opp'n* at 6–8.)

The policy defines an "Other Covered Event" as: "an unforeseeable event or its consequences that: (i) is outside of the Insured's control . . . ; (ii) prevents the Insured . . . from traveling on or continuing his/her Covered Trip; and (iii) occurs while coverage is in effect under this Policy." (*Decl.* at 32.) The policy further defines "Other Covered Event" to include:

> [A]rrangements canceled by an airline, cruise line, or tour operator resulting from severe weather conditions; mechanical breakdown of the aircraft, ship, boat, or motor coach . . . subject to the following conditions: (1) the scheduled carrier connecting times must meet airline legal minimum connect times; (2) the scheduled time between arrival at the **Scheduled Trip Departure City** and the scheduled tour/**Cruise** departure must be two hours or longer; and (3) the **Common Carrier** delay or cancellation must prevent the Insured from reaching his/her Destination for at least 12 consecutive hours[.]

(*Id.* at 48.)

Here, Plaintiff has not met his burden of showing that his claim falls within the basic scope of coverage under this provision. Plaintiff only alleges that the itinerary change required him to disembark in Breisach, Germany, rather than Basel, Switzerland, two cities approximately 40 miles apart. (*See Compl.* at ¶ 16.) Plaintiff argues that Defendant has failed to provide "evidence[2]" establishing the actual timing impact of the itinerary change, including the cruise's originally scheduled arrival time, the bus departure and arrival schedule, and any delays associated with crossing the international border between Germany and Switzerland. (*Opp'n* at 8.) However, because the 12-hour requirement is part of the policy's definition of an "Other Covered Event," Plaintiff bears the initial burden of alleging facts sufficient to establish that his claim falls within the scope of coverage. Although it is reasonable to assume that crossing an international border could result in additional delays, Plaintiff does not allege facts suggesting that any such delays would have prevented him and his wife from reaching Basel for at least 12 consecutive hours.

Accordingly, Plaintiff has failed to sufficiently allege that Defendant breached the policy. Defendant's motion to dismiss Plaintiff's breach of contract claim is therefore **GRANTED WITH LEAVE TO AMEND** as the Court cannot conclude at this stage that amendment would be futile.

### C. Second Claim: Breach of Implied Covenant of Good Faith and Fair Dealing

Because Plaintiff has failed to allege a claim for breach of contract, his claim for breach of the implied covenant of good faith and fair dealing claim also fails. *See Manzarek v. St. Paul Fire & Marine Insurance Company*, 519 F.3d 1025, 1034 (9th Cir. 2008) ("California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing.")

---

[2] The Court reminds the parties that this is a motion to dismiss, not a motion for summary judgment.

### D. Third Claim: Bad Faith Denial of Insurance

Lastly, the failure to allege a claim for breach of contract also forecloses Plaintiff's claim for bad faith denial of insurance. *See Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1153 ("Our conclusion that a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is rooted.") Because the request for punitive damages is premised on the bad faith denial of insurance claim, the request for punitive damages fails as well.

## V. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's motion to dismiss the complaint in its entirety **WITH LEAVE TO AMEND**. Plaintiff shall have until **December 8, 2026** to file a first amended complaint in compliance with this Order.

**IT IS SO ORDERED.**

Dated: November 24, 2026

Hon. Thomas J. Whelan
United States District Judge